NOVEMBER TERM, 1872.

Zabriskie, appellant, and Wood, respondent.

1. Where there is a limitation to the issue of the body, followed by the addition of a limitation to the heirs general of such issue, such addition will not prevent the word "issue" from operating to raise an estate tail.

2. The tenth section of the act relating to descents does not apply to estates limited in special tail.

3. The whole practical effect of this clause seems to be to abolish the rule in Shelly's case, when an estate is given for life, with a remainder to the heirs general of such donee.

4. Every kind of estates tail are regulated by the eleventh section of said act.

The grounds of the decree made in the Court of Chancery in this cause are fully set forth in the following opinion, delivered in that court by

The Vice-Chancellor.    The bill in this suit is to enforce the specific performance by the defendant of his agreement to purchase of the complainant an equal undivided fourth part of certain lands in the county of Hudson. The agreement calls for the conveyance of an unencumbered and indefeasible fee simple estate. The demurrer alleges that the complainant's estate, as set forth in the bill, and which he offers to convey, is not such as the contract requires. Whether it is or not, depends upon the true construction of the will of Jasper Zabriskie, deceased, who was the great grandfather of the complainant, and in 1828 died seized of the lands in dispute. His will was duly proved the same year, and that part of it from which the complainant's title is derived disposes of the lands in question as follows:

"I give, devise, and bequeath to my son Michael for life, and to such lawful issue of his body as he may have by any after-marriage, their heirs and assigns forever, the house, &c.

(describing the lands). Should my son Michael die without leaving such issue, then I give, devise, and bequeath the said lands to the lawful issue of my grandson Albert, their heirs and assigns, forever. Should my grandson Albert die without leaving such lawful issue, then I give, devise, and bequeath the said lands to the lawful issue of the body of my grandson Jasper Garretson, their heirs and assigns, forever. Should his (Jasper's) line fail, then I give, devise, and bequeath the said lands to my own heirs, their heirs and assigns, forever, according to the law of descents of New Jersey in force at the time of my decease."

The testator's son Michael, to whom the devise is first made, was the father of Albert, and died in 1855, without having contracted the after-marriage spoken of in the will, and without having had any children except his son Albert, who is still living. Albert had eight children living at the death of his father. The complainant is one of these eight, and claims title to the undivided fourth part in two ways, asserting, *first*, that upon Michael's death the title vested in Albert; that he afterwards conveyed to his son Michael A., who afterwards conveyed to his brother, the complainant; and, *second*, that if upon Michael's death the title did *not* vest in Albert, it vested in his eight children then living, each of whom took an undivided eighth part, whereby and by means of the conveyance from his brother Michael A., the complainant became the owner of one-fourth. The defendant, by his demurrer, admits the conveyances, but denies that the complainant, if seized at all, is seized of an *indefeasible* estate.

The complainant's first insistment is that upon Michael's death the title vested in Albert. It is not claimed that this was the testator's intent, or that it follows from the words of the will, understood in their ordinary untechnical sense. On the contrary, it is perfectly clear that the intent was directly the opposite, and that both the intent and the natural import of the words would exclude Albert from thus acquiring any interest in this portion of the testator's estate. But the insistment is that the *law* gives to the words a meaning and effect

to which their ordinary import must yield, and the argument in support of this insistment is based on the first and second sections of "An act further regulating the descent of real estate," passed the 13th of June, 1820, being sections 10 & 11, *Nix. Dig.*, (4th ed.,) p. 237.

The first of these sections enacts that in case any lands "shall hereafter be devised by the owner thereof to any person for life, and at the death of the person to whom the same shall be so devised for life, to go to his or her heirs, or to his or her issue, or to the heirs of his or her body, then and in such case, after the death of such devisee for life, the said lands shall go to and be vested in the children of such devisee, equally to be divided between them as tenants in common in fee, but if there be only one child, then to that one in fee."

By the second section, when a conveyance or devise vests an estate which, under the statute of the thirteenth of Edward the First, would have been held an estate in fee tail, the grantee or devise takes an estate for life only, and the lands afterwards go to the children, as is in the preceding section directed.

The words of this devise, " to my son Michael for life, and to such lawful issue of his body as he may have by any after-marriage," do not bring it within the letter of either of the sections. But the statute is not to be confined to mere identity of words. The first section was held in *Den* v. *Demarest*, 1 *Zab.* 538, to counteract entirely, so far as devises are concerned, the operation of the rule in Shelly's case, and this was declared to be its main end and design. This declaration can only stand upon the ground that the words of the section " to his or her heirs, or to his or her issue, or to the heirs of his or her body," are general terms, and comprehensive of the various words which in any devise would subject it to the operation of that rule. In the same way the words in the second section, "an estate in fee tail," created by the words "heirs of the body," must include every special form which an estate tail can take on. In this view, the object of the first section was, so far as wills are concerned, to abrogate

the rule in Shelly's case; the object of the second section, to abolish estates tail.

The devise in the present case is, "to my son Michael for life, and to such lawful issue of his body as he may have by any after-marriage." These words cannot create an estate tail except by force of that rule. If they are within the scope of that rule, the devise became liable to the action of each section alike, and an estate for life was by each section vested in Michael, upon whose death his only child, Albert, took the whole estate in fee. In that event, the complainant, by the conveyances, is the owner of the whole indefeasible estate instead of one-fourth, and the demurrer must fall. This construction vests in Albert other lands not included in the conveyances, and which the testator obviously meant him not to have. But if that rule does not attach to the devise, neither section of the statute will affect it, and the intention of the testator will prevail. The rule in Shelly's case was of feudal origin and policy, and was designed to favor the transmission of estates by descent, and prohibit their transmission in certain lines of succession by means of a deed or will instead of by inheritance, according to the course of the law. In that ancient case it was expressed that when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, *the heirs* are words of limitation of the estate and not words of purchase. By which is meant that the ancestor, or in other words the first taker, takes the whole estate in fee instead of for life, when the words are to his heirs, and an estate tail instead of for life, when the words are to the heirs of his body. This rule was not one of interpretation but of positive law. It did not seek the intention, but in most cases defeated it. Where by fair interpretation of the instrument the expressed intention was not such a disposition as the rule prohibited, the rule did not apply. Where it was, the rule inflexibly interfered to prevent it. The question, when the intention came in conflict with the rule, was often extremely

difficult to solve. The vast multitude of cases wherein, since 1581, when this rule was laid down, its application has been made matter of judicial decision, forms a most abstruse and perplexing, and now nearly obsolete part of the law. Many of these cases were cited at the argument, and reasoned on with great ability and learning, by the counsel of complainant, to show that the words of the present devise are within the scope of that rule. After the best consideration I have been able to give them, I think this view cannot be maintained.

A single feature of this devise is, in my judgment, a sufficient reason why the rule cannot attach to it. This feature is the addition to the word *issue*, of the words, " their heirs and assigns forever." They are appropriate and technical words to describe a fee simple estate. They are descriptive of a different and larger interest, and one of different descendible qualities from that which such issue would take by virtue of the rule, if these superadded words had been omitted. They import an order of succession different from that imported by the limitation to the issue. They break the succession by making the issue a new stock of descent. This circumstance, as I understand the rule, goes to its rationale and gist. In Preston on Estates, chapter third, in a definition marked by explanatory fullness, the limitation is described as to a class or denomination of persons to take in succession from generation to generation. Where this is not the effect of the words of the devise the rule does not apply, and the testator's expressed intent is carried into effect. Thus in *Doe* v. *Collis*, 4 *T. R.* 294, where the devise was of a moiety to A for life, and to the issue of her body, with the superadded words, " and to their heirs forever," the judgment of Lord Kenyon was, A, tenant for life, with remainder to her children in fee. There the estate to commence in and be deduced from the persons who should be the issue of her body, was more extensive than the estate in tail which A would have taken on the supposition that the limitation to her for life, and the issue to her body, gave her the inherit-

ance. Lord Kenyon said in this case, that in a will *issue* is a word either of purchase or limitation, as will best answer the intention of the devisor. In other cases the superadded words import a less extensive estate, and on the same ground of an interruption in the nature of the succession, exempt such cases from the influence of the rule, and in each case make the words issue or heirs descriptive of the persons who shall take, and their taking to be by purchase and not by descent. This doctrine and its exemplifying cases are set forth in the third chapter, above cited, of Preston on Estates, a chapter exclusively devoted to an exposition of that celebrated rule. On page 352, he says: "Perhaps it will not be too much to assume it as a general conclusion, deducible from the authorities which have been noticed, that the point of difference furnished by the cases, is that whenever the superadded words of limitation do intentionally give a direction to the course of descent, different from that which must take place under the former branch of the gift, so often the words, 'heirs, &c.,' in that branch of the limitation, will be words of purchase and not of limitation." On page 379, he says that "the word *issue* is not *ex vi termini* within the rule in Shelly's case. It is a word of less determinate meaning than the words *heirs of the body*, and in wills depends for its construction more on the intention of the testator, than on the strict rules of the law." See, also, *Hayes' Essay, Law Library, Vol. VII.; Sisson* v. *Seabury*, 1 *Sumner* 238 ; *Cruise on Real Property, Title, Devise, chap.* 14, § 24 ; 4 *Kent* 221.

My opinion is, that the rule in Shelly's case would not, prior to the state of 1820, have attached to the words of this devise, and that, therefore, its legal meaning and effect are exactly what the testator meant them to be, viz. a life estate in Michael, with remainder in fee to his issue by any subsequent marriage. This remainder was contingent, because such issue were not in being when the will took effect. The remainder failed, because Michael died without such a marriage, and thereupon the fee vested in the issue of Albert, being his eight children, then living. I think, also, it vested

Zabriskie v. Wood.

in these eight, to the exclusion of any who might afterwards be born, because, under the rule in such cases, the death of Michael was the period of distribution. 2 *Jarman* 76.

The complainant in this way became seized of one-eighth, and by the conveyance of his brother, of another eighth. The only question remaining is, does any defeasible quality belong to his fourth, thus acquired? The devise is, "should my grandson, Albert, die without leaving such lawful issue, then I give, devise, and bequeath the said lands to the lawful issue of my grandson, Jasper Garretson." The meaning of the words "die without leaving such lawful issue," must be held in this case to be settled by the decision of the Court of Errors, in *Cotheal* v. *Morehouse*, 2 *Zab.*, note, *page* 440. They denote a definite failure of issue. The failure of Albert's descendants is a failure at his death. This altered meaning of the words has the effect to sustain the devises over, which would have been bad for remoteness by the law as it stood before that decision was made. If, therefore, at Albert's death, none of his issue should be living, the devise over would carry the lands to the children of Jasper. If the word *leaving* could be construed as *having*, as the complainant contends it should be, the title of the complainant would be absolute. But I can see no propriety in such a construction. The case of *Du Bois* v. *Ray*, 35 *N. Y. Rep.* 162, and the authorities therein cited and reviewed, where this change of leaving for having was made, are broadly distinguishable from this. In all the cases it is put upon the ground that such a construction is necessary to sustain the validity of the disposition, to make the will consistent with itself, or carry out the testator's manifest intent. In such cases, the primary rule that the plain and unambiguous words of the will must prevail, is applied, in connection with other rules of interpretation, to ascertain what the testator meant. Where the plain meaning of the words leads to results which other sound rules of interpretation forbid, every effort will be made to "manage" the words and keep them in subjection to the sense. In the present case, no such results will be produced

if the words are strictly adhered to.   The effect of the pro-
posed change, besides being advantageous to the present
owners of the lands, would make the will, perhaps, a more
judicious one, in the opinion of others.   It need hardly be
said that this circumstance alone is not to be considered.
The testator, not the court, makes the will.   As said in *Ely* v.
*Ely*, 5 *C. E. Green* 49, no testator could safely express any
intention, if the courts, at their pleasure, could substitute
words which would change his direction.

The complainant's estate is not, therefore, indefeasible, and
the demurrer must be sustained.

I respectfully advise a decree in accordance with the above.

From the decree so made, the complainant appealed to
this court.   The appeal was argued by

*Mr. L. Zabriskie*, for appellant.

*Mr. Dixon*, for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The question is whether the title tendered in the bill is
good, and is such a one as is called for by the agreement to
purchase.   This controversy depends on the legal effect of a
certain provision in the will of Michael Zabriskie.   The
complainant claims that by force of this instrument he has
a fee simple in the entire property, or at the least, a fee in
the undivided fourth part of the premises, which was the
quantity agreed to be sold by him.   He further claims that
such estate is subject to no contingency and is indefeasible.
These are the questions to be settled on this appeal.

The contested declaration of this will is in these words,
viz : " I give and bequeath to my son Michael, for life, and
to such lawful issue of his body as he may have by any after-
marriage, their heirs and assigns forever, the house, &c., (de-

scribing the lands.) Should my son Michael die without leaving such issue, then I give, devise, and bequeath the said lands to the lawful issue of my grandson Albert, their heirs and assigns forever. Should my grandson Albert die without leaving such lawful issue, then I give, devise, and bequeath the said lands to the lawful issue of the body of my grandson Jasper Garretson, their heirs and assigns forever. Should his (Jasper's) line fail, then I give, devise, and bequeath the said lands to my own heirs, their heirs and assigns forever, according to the law of descents of New Jersey in force at the time of my decease."

Michael, the son of the testator, died without leaving issue by the designated marriage; Albert, the grandson, is still living and has eight children, of whom the complainant is one. It also appears in the case that the complainant has, through mean conveyances, all the interest in the lands, if any such accrued, which came by virtue of the foregoing testamentary provision to his father Albert, and this condition of the case gives occasion to the inquiry above stated, whether or not the complainant has an estate in fee simple in the premises embraced in the bill of complaint. This contention stands upon these grounds: that the devise to Michael, the grandfather of complainant, is a fee tail; that by force of the statute of this state regulating the descent of lands, such an estate was converted into a life estate in the grandfather, and into a remainder in fee in Albert, the son, and that such fee, by the conveyances just mentioned, is now vested in the complainant. The title thus deduced was not approved of in the Court of Chancery, it being there decided that the devise in question did not create an estate tail. It was conceded that the words, " I give, devise, and bequeath to my son Michael, for life, and to such lawful issue of his body as he may have by any after-marriage," standing alone and unexplained, would, by virtue of the rule in Shelly's case, have created a fee tail, but it was considered that the subsequent words, limiting forever the estate to the " heirs and assigns" of the issue of the body, showed a clear inten-

tion that the estate was not to pass by way of indefinite succession to the lineal descendants.

It is certainly clear that this devise, in the absence of the words which were deemed explanatory of the previous limitation, would, in view of a rule of law, entirely settled, have given a fee tail to Michael, the son of the testator, and his issue by the designated marriage. It was said that such a limitation would have fallen under the regulation of the tenth section of the act relating to the descent of lands. *Nix. Dig.* 237. But as the estate thus formed would have been an estate tail special, being confined to the issue by a subsequent marriage, that clause of the act would have been wholly inapplicable. It is true that in order to bring this section into force it is not necessary that the verbal description of the estate in the will must correspond with the verbal description of the statutory subject, but the two things in point of fact must be the same. This provision in the act, construed according to the unobscure meaning of its plain terms, and giving to them their common law effect, embraces nothing except estates tail general, arising by devise. Its language is: " In case any lands, &c., shall hereafter be devised by the owner thereof to any person for life, and at the death of the person to whom the same shall so be devised for life, to go to his or her heirs, or to his or her issue, or to the heirs of his or her body, then, and in that case," &c. The subject to be regulated is, in these terms, very plainly described. It is a life estate in the first devisee, with a remainder to his lineal descendants in indefinite succession. It, therefore, does not apply when the limitation is only to a particular class of lineal descendants, which is the present case. But it does not seem to me that this construction can have any important influence in the application of this statute to the present, or to any other testamentary disposition which relates to estates tail. I have not been able to discern that there can arise any case in which this tenth section of this act can have, in such respect, any practical effect whatever. It has been said by Mr. Griffith, that the purpose of the

clause was to abolish the rule in Shelly's case; but it is manifest that it can effect this end only to a limited extent, as it does not relate to estates tail, arising by force of such rule out of the limitations of a deed, nor to estates tail special. However, I suppose there can be no doubt that the design was to control the rule in this limited degree. But the difficulty is to perceive the use of such a control over the creation of estates tail, because, if the rule is allowed to remain, and an estate tail should come into existence under its operation, the result will be, in point of fact, the same as though the rule had been rendered inoperative. In every case in which an estate tail arises, the eleventh section of the act disposes of it in the same way as it is disposed of in the tenth section, that is, it gives a life estate to the first taker, and a remainder in fee to his children, in equal shares. In point of utility the former of these sections appears to me to be a nullity, except where there is a devise to a person for life, with a remainder to his heirs in fee. This was the case in *Den ex. dem.* of *Hopper* v. *Demarest*, 2 *Zab.* 599. But if the present devise produces an estate tail, it will be subject, not to the regulation of the tenth, but to that of the eleventh section of the statute in question.

I have already said that it is obvious that, if this devise had limited the estate to Michael for life, and to the issue of his body by any subsequent marriage, an estate tail would, according to the rules of the common law, have arisen. The only subject of inquiry, therefore, is, as to the legal effect of the words superadded to the clause, giving the estate to the special issue of the body.

This problem is not, of course, susceptible of a demonstrative solution. Like most of the questions belonging to this branch of the law, it has been obscured by subtle distinctions and over-nice refinements, and rendered intricate by judgments which it is difficult, if not impossible, to harmonize. The proposition on which the decision in the Court of Chancery is grounded is, that where a devise gives an estate to a person for life, and to the issue of his body, the addition to

a limitation to the heirs general, forever, of such issue, will prevent the words " issue of the body " from operating, according to their technical effect, to give an estate tail. The argument for this conclusion is, that this limitation to the heirs general of the issue, is not consistent with the order of the devolution of an estate tail, and that it, consequently, appears that it was not the intention to create such an estate.

This general proposition is explicitly controverted by Mr. Jarman, in his Treatise on Wills, *Vol. II., p. 246*, and he appears to consider that the opposite rule is now settled by the authorities. His language, in this particular, is : " It is also established that the addition of the limitation to the *heirs general* of the issue, will not prevent the word 'issue' from operating to give an estate tail as a word of limitation." A more recent writer, Mr. Hawkins, has drawn a similar conclusion from the adjudged cases. *Hawk. on Wills, p.* 185. Each of these authors cites a line of adjudications in support of the view entertained by him, and this array of authority is certainly imposing. But I have also found a line of decisions adopting the opposite view, and some of which are of great weight. I shall not attempt any comparison or review of these conflicting opinions, as from the view which I take, such a course would subserve no useful purpose. I will simply remark that, in my judgment, the authorities referred to do not put this question entirely at rest. It is proper, however, to say that the preponderance of opinion is in favor of the rule indicated in the text books above quoted. But, as I find the point still in suspense, there being a line of decisions sustaining each side of the question, and, as it seems to me that there exists no consideration of such paramount weight as to incline the mind, of necessity, either way, I should have been unwilling to dissent, under the force of these influences alone, from the view already expressed in this case. But my attention has been called to a decision in the Supreme Court of this state, which is directly in point, and which does not appear heretofore to have been presented for judicial consideration in the progress of this suit. *Den.* v. *McPeake, Penn.*

291, is the case to which I refer. The question was raised on the language of a deed, which the report states was to this effect: " Unto Susanna McGennis, for her support during her natural life, and after her decease, to the heirs of her body, and *to their heirs and assigns for ever.*" It will be thus observed that the superadded words were the same as those employed in the present devise, and their effect was the principle subject of inquiry. The point was thus disposed of, the language of the opinion being: "The subsequent words, *and to their heirs and assigns,* are either merged in the preceding words, limiting the estate to the heirs of her body, or are too uncertain to control them. There are cases of devises where the testator hath superadded fresh limitations and grafted other words of inheritance upon the heir to whom he gives the estate, whereby it evidently appeared that these heirs were meant by the testator, to be the root of a new inheritance, and not considered as branches derived from their own ancestor. But I do not consider the present case as coming within any of them."

There are but two differences between the case thus decided and the one now under consideration. In the reported case the estate was created by deed, and the words of the first limitation were, "to the *heirs* of the body ;" in the present devise the expression is, to the *issue* of the body. But although the words " issue of the body " have been sometimes held to be terms of less inflexibility than the term, " heirs of the body," I do not find that they have been so received with respect to the present superadded phrase. Nor do I think that these engrafted terms ought to have, in the same connection, a construction in a deed different from what they will bear in a will. This case in the reports of Mr. Pennington is too closely apposite to be disregarded on this occasion. There is no ground on which it should be overruled. It has stood in our reports, apparently unquestioned, since the year 1807. Gentlemen of the profession had a right to rely on it in giving advice to their clients, and it is probable that titles have been sold and purchased on its authority. To create a

fanciful distinction between this case and the devise now open for construction would involve the subject in obscurity and perplex it with doubts, while it is important to have the legal effect of the terms in question plain and easily comprehensible.  It is on this account I conclude that the superadded words should not have the force which has been attributed to them.

The result is, that in my judgment, by force of the testamentary clause now considered, Michael, according to the principles of the common law, would have been seized of an estate tail, and that consequently, under the operation of the eleventh section of the statute in question, he became the owner of a life estate, with a vested remainder in fee in his son Albert.  As the case shows that the complainant has the title of his father by force of a conveyance, such title is good, and the defendant should take the premises in compliance with his agreement to that effect.

The appellant is entitled to judgment in this court.

Decree reversed.

For reversal—BEASLEY, C. J., DEPUE, OLDEN, SCUDDER, VAN SYCKEL.   5.

For affirmance—BEDLE, DALRIMPLE, OGDEN, WOOD-HULL.   4.